IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| KATHY WAGNER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 05-4261-CV-C-NKL |
| | ) |
| JOHN (NICK) KARSON, | ) |
| | ) |
| Defendant. | ) |

**FINDINGS OF FACT, CONCLUSIONS OF LAW,
JUDGMENT AND ORDER**

On December 5, 2006, this case came before the Court for a bench trial. The plaintiff, Kathy Wagner, appeared in person and by her counsel, Michael G. Berry. The defendant, John "Nick" Karson, appeared by his counsel, Bradley C. Letterman.

Previously the plaintiff dismissed her claims against a co-defendant, Cookbook Publishers, Inc. Before the Court heard evidence, Wagner's counsel moved the Court for leave to amend her Second Amended Complaint. The Court granted the motion. The parties also stipulated that Karson denied the allegations against him in the Second Amended Complaint and asserted his affirmative defenses previously raised in his answer to the First Amended Complaint.

Wagner presented the testimony of three witnesses, Thomas Mefford, a licensed psychologist practicing in Sedalia, Missouri; Ann Orzak, a friend of Wagner's; and

1

Wagner. Karson's counsel cross examined each of plaintiff's witnesses, but presented no evidence.

**Findings of fact.**

1. Wagner was born on July 1, 1954. She lives in Sedalia, Missouri.

2. Wagner began employment with Cookbook Publishers in 1989 and resigned in August of 1996. Wagner was a good employee and received an award from the Sedalia Chamber of Commerce as the outstanding employee of the year for 1993. At the time she resigned she was a press operator. In this lawsuit Wagner makes no allegations against Karson having to do with the period of time between 1989 and 1996.

3. Wagner returned to Cookbook Publishers in 1996 as a binder, someone who binds books. She was promoted to the position of purchasing agent later that year or early in 1997. As a purchasing agent for Cookbook Publishers Wagner ordered the paper, ink and other supplies used by the company in its business. Her immediate supervisor was Karson. Karson remained Wagner's supervisor throughout the rest of her tenure at Cookbook Publishers.

4. In 2001 Karson began a pattern of sexually offensive behavior toward Wagner. His practices included describing his sexual activities with other women in graphic detail, reading sexually explicit letters and e-mail messages to Wagner, showing her nude photographs of women, telling her about his girlfriend's breast enlargement, and playing recorded telephone messages with sexual content for Wagner.

5. Throughout this time Karson's routine was to come to work with his breakfast and eat it in Wagner's office while telling Wagner about his sexual

"adventures." Karson would lock the door to Wagner's office while this went on. Sometimes Karson did these things when Wagner came to his office. Wagner estimated that Karson acted out in this way toward her three out of five days per week.

6. Karson commented to Wagner about her appearance and "put her down."

7. Wagner told Karson many times that she didn't want to hear about his sexual activities.

8. As a result of Karson's activities, Wagner suffered loss of sleep, nausea, diarrhea and weight fluctuation. Wagner was experiencing high blood pressure. Wagner felt shame and isolated herself from friends and family, stayed in her house more, avoided visiting friends and even stayed away from family holiday gatherings. In response to defense counsel's cross examination, Wagner attributed the start of her emotional problems stemming from Karson's conduct to March, 2001.

9. Wagner's friend, Ann Orzak, testified that Wagner started isolating herself socially at about the same time she started complaining to Orzak about Karson's conduct toward her. Wagner started losing interest in travel and other activities she and Orzak shared before. Orzak noticed that Wagner started gaining weight in the autumn of 2002 and stopped caring for her appearance.

10. Orzak, who has a PhD in psychology, found Wagner to be depressed. Wagner and Orzak saw one another about once per month in 2004, but communicated every day or two by telephone or e-mail.

11. In response to cross examination by Karson's counsel, Orzak testified to noticing Wagner's increased anxiety over Karson's behavior in the spring of 2002.

3

12. Wagner resigned her job at Cookbook Publishers in September, 2004 because of Karson's relentless behavior toward her. Wagner was then making a base salary of about $28,000.00 per year, participated in the company's employee stock program, and received heavily subsidized health insurance. The yearly value of Wagner's compensation and benefits was approximately $40,000.00 at the time she resigned.

13. Wagner has been unsuccessful in finding employment in the Sedalia area comparable to the job she left at Cookbook Publishers. Wagner applied at many jobs but was rejected for these. She has supported herself with doing odd jobs and living off of the charity of family and friends.

14. Wagner's house was foreclosed after she left Cookbook. Orzak eventually bought it through a real estate agent and Wagner lives back in this house now.

15. Wagner had some history of depression related to prior events in her life, such as deaths in her family. Wagner had taken Valium and Paxil occasionally for these episodes, with a doctor's prescription.

16. Wagner was examined by Thomas Mefford in 2006. Mr. Mefford is a psychologist practicing in Sedalia. Mefford is qualified to make psychological diagnoses of individuals and does so in the course of his practice.

17. Mefford met twice with Wagner, took a history from her, and administered the Minnesota Multiphasic Personality Inventory (MMPI), a recognized evaluative test which includes components designed to assure the test's validity. Mefford diagnosed Wagner with having both major depressive disorder and post traumatic stress disorder.

These are both medically recognized conditions described in the Diagnostic Statistical Manual, fourth edition (DSM IV), a text which sets out the diagnosis for psychological disorders.

18. Mefford found that Wagner's experiences with Karson caused her post-traumatic stress disorder. This condition was not present before. Karson's actions toward Wagner intensified her prior depressive disorder, and that Wagner's failed efforts at finding employment after leaving Cookbook further exacerbated the depression she experienced.

19. Wagner is not seeking professional counseling at this time, though Mefford recommends it. Wagner is unable to afford counseling and avoids it for the further reason that she does not like revisiting her memories of Karson's behavior toward her.

20. Orzak, in response to cross examination by defense counsel, testified that in her professional experience people often delay and avoid therapy for traumatically induced emotional disorders.

21. The Court finds that Karson's actions toward Wagner created an unreasonable risk of causing her to suffer physical and emotional distress. Carson should have realized that his conduct caused an unreasonable risk of causing Wagner distress.

22. The Court finds that in continuing to subject Wagner to sexually offensive behavior, Karson was negligent, in that he failed to exercise ordinary care under the circumstances to avoid causing harm to Wagner. There is no evidence that Karson intended to cause harm to Wagner.

23. As a direct and proximate result of Karson's behavior, Wagner suffered damage. In addition to the financial consequences of leaving employment at Cookbook Publishers, Wagner suffered a combination of interrelated conditions which resulted in physical injury, including high blood pressure and its consequences, digestive disorders, sleeping disorders, and weight gain. She developed post traumatic stress disorder and major depressive disorder. Her physical conditions and related emotional conditions caused by Karson's actions were sufficiently severe to be medically significant and medically diagnosable, and in fact were diagnosed by a psychologist who was qualified to make such a diagnosis.

**Conclusions of law.**

1. The Court has subject matter jurisdiction to decide this case. At the time trial began Wagner no longer had any claims pending which were based on federal substantive law. Her initial Complaint and her First Amended Complaint did assert claims under federal law, over which this Court had original jurisdiction. There is no diversity of citizenship between Wagner and Karson. Both are Missouri residents. Thus, when Wagner amended her Complaint to exclude all federal claims against Karson, the Court lacked any basis for original jurisdiction. The Court has discretion to decline to exercise supplemental jurisdiction over a state law claim "…once the court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). However, judicial economy, fairness, convenience and comity are considerations governing the Court's decision of whether to dismiss this case or retain jurisdiction. *Baggett v. First National Bank of Gainesville,* 117 F.3d 1342 (11th Cir. 1997). Here these considerations

6

weigh in favor of the Court retaining jurisdiction. It would have served no useful purpose to put Wagner and Karson to the trouble of relitigating in state court a case which was completely ready for trial immediately upon Wagner abandoning her federal claims against Karson. Neither party objected to the Court retaining jurisdiction, and in fact, stipulated that the Court could retain jurisdiction.

2. The Court has personal jurisdiction over Karson. Karson has never challenged the Court's personal jurisdiction and has thereby waived any objection to the Court exercising personal jurisdiction over him.

3. Wagner's claims against Karson were tried on a single state law theory of negligent infliction of emotional distress. The elements of a negligence cause of action under Missouri law are: 1) a legal duty of the defendant to protect the plaintiff from injury, 2) breach of the duty, 3) proximate cause, and 4) injury to the plaintiff. *Thornburg v. Federal Express Corp.*, 62 S.W.3d 421, 427 (Mo. Ct. App. 2001) (citation omitted). A cause of action for the negligent infliction of emotional distress requires proof of two additional elements: 1) that the defendant should have realized that his conduct involved an unreasonable risk of causing distress, and 2) that the emotional distress or mental injury must be medically diagnosable and medically significant. *Id.*

4. The Court finds that Karson had a duty to stop his conduct toward Wagner. A reasonable person in Karson's position should have known that his behavior created an unreasonable risk of causing a person in Wagner's position harm. This alone created a responsibility on Karson's part to stop.

5. The Court concludes that Karson is liable to Wagner for her damages because they were caused by his conduct toward her in breach of his duty.

Accordingly, it is hereby

ORDERED that Wagner shall have judgment against Karson in the amount of $300,000.00 with interest accruing thereon as of December 5, 2006, together with her taxable court costs.

Date: January 19, 2007          /s/ Nanette K. Laughrey
                                Nanette K. Laughrey,
                                U.S. District Judge